say that my decisions already cited give all the reasons that I consider it necessary to give at this time. Petition denied.

UNITED STATES ex rel. AMES v. TWO HUNDRED AND SEVENTY-FIVE CADDIES OF TOBACCO. See Case No. 15,881.

## Case No. 16,582.

### UNITED STATES v. TWO HUNDRED AND SIX BARRELS.

[See Case No. 16,503.]

## Case No. 16,583.

### UNITED STATES v. TWO HUNDRED AND SIXTY-NINE AND ONE-HALF BALES OF COTTON.

[Woolw. 236; [1] 25 Law Rep. 451; Rev. Cas. 1.]

Circuit Court, D. Missouri. Oct., 1868.

PROCEEDINGS IN PRIZE—JURISDICTION ON RIVERS —ATTACK FROM SEA—THE LOCALITY— THE VESSELS AIDING.

1. Great laxity is tolerated in proceedings in prize courts: and irregularities, such as the captors not being parties, and not bringing the prize into court for adjudication, may be corrected.

2. The admiralty courts of the United States have jurisdiction in prize over captures made on the Mississippi river during the current Rebellion.

3. There are certain reasons, founded on the general principles of international law, why every capture on the high seas, jure belli, shall be carried before a prize court.

4. The exclusive jurisdiction of the admiralty over the great rivers is now well established.

5. The naval contests thereon have been of great magnitude during the current Rebellion, and numerous captures, jure belli, have been made. and the so-called "Confederate States" have been recognized as belligerents.

6. The prize jurisdiction has been sustained only when the naval arm has made, or co-operated in making, or, by its presence and active assistance, contributed immediately in effecting the capture.

7. The force operated from the sea.

8. The capture has been of some place used in naval warfare, as an island, &c.

9. Vessels not commanded by government officers, nor armed, and used merely as transports for troops, are not war vessels, and do not bring within the prize jurisdiction a capture on land by military forces.

[Appeal from the district court of the United States for the district of Missouri.]

This was a proceeding in prize for the adjudication of certain cotton. The facts [2] appear from the libel, which was as follows: United States of America, Eastern District of Missouri, ss.: In the District Court of Said United States for Said Eastern District. To the Honorable Samuel Treat, Judge of Said District Court: The libel of William W. Edwards, attorney of the United States for said Eastern district of Missouri, who, being here in his own proper person, prosecutes in the name and on behalf of the United States, against 269½ bales of cotton, marked "C. S. A." and other marks, and against all persons lawfully intervening for their interest therein, does hereby propound, allege, and articulately declare to this honorable court as follows:

Firstly. That said 269½ bales of cotton, marked as aforesaid, are now in the city of St. Louis, in the said Eastern district, and are in the possession and custody of the marshal of this court; that the same were first seized by said marshal on the 13th day of October, A. D. 1862, the said bales of cotton being, at the time of said seizure, on board of the steamboat John H. Dickey, and on the Mississippi river, a public navigable water of the United States, and within the admiralty and maritime jurisdiction of this court.

Secondly. That on or about the 26th day of September, A. D. 1862, in pursuance of the in-

whom it was turned over to the collector of that port. He reported it to the district attorney for violation of the revenue laws. That officer filed a libel against the cotton for violating the "nonintercourse" act of July 13, 1861 [12 Stat. 255], and, also, to provide for contingencies which need not be here described, filed a libel, or rather information, containing two counts,—one under the act of August 6, 1861 [12 Stat. 319], "to confiscate property used for insurrectionary purposes," and one under the confiscation act of July 17, 1862 [12 Stat. 589]. He besides filed the libels which gave rise to the present decision. Various conflicting claims were filed, and the claimants excepted to the second and third libels, principally on the ground of jurisdiction. The constitutionality of the confiscation act of July 17, 1862, was also discussed at bar, but not decided; Judge Treat of the district court holding, in a very able and elaborate opinion, covering all those points, that this cotton was not, within the 7th section of that act. either "found" or "first brought" within the Eastern district of Missouri, as appeared from the libel, and that, therefore, under that act, the court had no jurisdiction. This decision left the second libel standing upon the count based upon the act of August 6th, and this case is still pending in the district court. The exceptions to the third or "prize" libel were sustained, and the libel dismissed, and from this decree an appeal taken, the result of which is seen in the present decision. The court states that the libel is not "aptly framed" as a prize libel. This was intentional. It is obvious that the proceedings previous to the filing of the prize libel were, as prize proceedings, wholly irregular. None of the machinery of prize courts was prepared or in operation at St. Louis. The object was to file such a libel as would raise on its face the objections that would certainly be made. If the case were really one of prize jurisdiction, irregularities of procedure would not divest the jurisdiction. The Dos Hermanos, 2 Wheat. [15 U. S.] 76.

---

[1] [Reported by James M. Woolworth. Esq., and here reprinted by permission. 25 Law Rep. 451, contains only a partial report.]

[2] NOTE [from 25 Law Rep. 451]. This lot of cotton, after having been captured, as stated in the opinion, was brought to Helena, and there got into private hands. It was taken from Helena to Memphis as private property, there seized by the quartermaster, and shipped to the military authorities at St. Louis, by